## Markle's Estate.

Argued April 10, 1933. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Ben R. Jones, Jr.*, with him *Herman J. Goldberg,* Deputy Attorney General, and *Wm. A. Schnader,* Attorney General, for appellant.

*John H. Bigelow,* for appellee.

OPINION BY MR. JUSTICE DREW, April 17, 1933:

Alvan Markle, a resident of Luzerne County, died on March 19, 1931, testate. The clear value of his estate subject to tax in Pennsylvania was determined to be slightly in excess of two million dollars and, on this valuation, a normal transfer inheritance tax of $43,-540.24 was assessed against the estate, under the Act of June 20, 1919, P. L. 521. The executors of the estate, availing themselves of the discount of five per cent given by section 38, for payment of the tax within three months after the death of the decedent, paid the Register of Wills, as agent for the Commonwealth, the sum of $41,363.23—this being the amount of the tax assessed less the discount of $2,177.01—in full payment and discharge of the tax.

The United States levied against the estate a federal estate tax of $154,484.33. Of this sum the executors

claimed a credit of eighty per cent, as allowed by section 301 (b) of the Revenue Act of 1926,* or $123,586.67, for the transfer inheritance tax paid to the Commonwealth of Pennsylvania, and then paid the federal government the balance, or twenty per cent of the tax, $30,-896.66. The executors next paid to the Register of Wills, as the Commonwealth's agent, the sum of $80,046.42 (the difference between eighty per cent of the federal tax—$123,586.67—and the amount of the normal inheritance tax assessed by the Commonwealth—$43,540.24) as payment in full of the additional inheritance tax due under the Act of May 7, 1927, P. L. 859, which was amended as to matters immaterial to the present discussion by the Act of May 16, 1929, P. L. 1782. The Commonwealth now claims there is still due $2,177.01, which is the amount of the discount allowed by the Commonwealth for prompt payment of the normal inheritance tax. In other words, the claim is for the difference between the additional inheritance tax paid by the estate, $80,046.42, and $82,223.43, this latter sum being the difference between eighty per cent of the federal tax, $123,-586.67, and the $41,363.23 paid in satisfaction of the normal inheritance tax. From the assessment of this $2,177.01 against the estate the executors appealed to the Orphans' Court of Luzerne County, which disallowed the claim. The Commonwealth appealed.

The above are the agreed facts of the case. The sole question is, does the estate owe this amount to the Commonwealth? This in turn makes necessary a deter-

---

* This section reads as follows: "The tax imposed by this section shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed by this subdivision shall not exceed 80 per centum of the tax imposed by this section, and shall include only such taxes as were actually paid and credit therefor claimed within three years after the filing of the return required by section 304."

mination of how the additional transfer inheritance tax imposed by the Act of 1927 is to be computed. The relevant portion of the act is as follows:

"Whenever in any estate the total tax paid or payable to the Commonwealth......, at the rates fixed under the inheritance tax law, shall be less than the total credit allowed by the Federal law for taxes paid to the states, then the tax imposed by this act upon the transfer of such property shall be an amount equal to the difference between the total credit, allowable by the Federal law for taxes payable to the state governments, and the total taxes actually paid or payable to the Commonwealth ......under the inheritance tax laws......"

It is the Commonwealth's contention that the "total taxes actually paid" which are to be deducted from the credit of eighty per cent allowed by the federal statute in computing the additional tax, is that sum of money which the Commonwealth accepts in satisfaction of the normal tax; in other words, that the clause in the Act of 1927 stating how the additional tax is computed is to be construed to read: an amount equal to the difference between the total credit allowed by the federal law for taxes paid to the state governments and the *cash* actually paid to the Commonwealth. The executors, on the other hand, contend that the "total taxes actually paid" means the amount of the tax which was discharged by the payment made.

In our opinion, the contention of the Commonwealth cannot be maintained. We do not agree that the amount of the tax actually paid was only the amount of the cash turned over. The actual tax was the amount of the assessment—$43,540.24—not that sum less the discount allowed for prompt payment. The assessment, not the sum paid, determined the amount of the tax. The tax was definitely fixed by the assessment, the only thing that could determine it. The rule is absolute. There can be no question that the whole amount of this tax was paid. No effort is being made, or can be made, to

collect the difference—the reason being that the Commonwealth cannot deny that the tax was actually paid in full, as is best shown by the tax receipt itself. Since this is true, it begs the question to say that the tax paid is only the cash amount actually turned over. The exact truth is, the cash paid is only the amount of the tax less a discount for prompt payment. The tax paid was the amount of the assessment. The account between the Commonwealth and the estate, so far as this tax is concerned, is closed. We therefore hold that the "taxes actually paid" which, by the Act of 1927, supra, is to be deducted from the credit allowed by the federal law, is the amount of the *tax* which was discharged by payment —the original assessment of $43,540.24.

In support of its contention that "taxes actually paid" means "cash given in payment," the Commonwealth relies on Smith v. Commissioner of Internal Revenue, 59 F. (2d) 533. In that case the Circuit Court of Appeals for the Seventh Circuit affirmed an order of the Board of Tax Appeals (23 B. T. A. 278) refusing to permit the executor of an estate to claim credit in computing the federal estate tax for discounts allowed by the states of Indiana and Ohio for prompt payment of inheritance taxes. The ground of the decision was that the provision in the Revenue Act of 1926 that the credit of eighty per cent allowed for state inheritance taxes "shall include only such taxes as were actually paid" means that credit may be claimed only for the amount of cash paid in discharge of the state tax. Neither in the opinion of the Circuit Court of Appeals nor in that of the Board of Tax Appeals is any reason or authority given for this conclusion. This seems to be the only decision on the subject; no other case has been called to our attention, nor have we found any. This decision of a federal court interpreting a federal statute is, of course, not binding upon us in construing a Pennsylvania statute using similar words, and, since we are convinced that our own interpretation is supported by sound reasons and a

proper public policy, we are not persuaded by it. Whatever may be the proper meaning of the phrase in the federal statute, we hold that, as used in the Act of 1927, supra, "taxes actually paid" means the amount of the tax discharged by payment.

It is also contended on behalf of the Commonwealth that the executors have no standing to question the construction of the Act of 1927, supra, because, regardless of the construction placed on that act, the total amount of taxes payable by the estate remains the same—if the Commonwealth does not collect the sum which it now claims, it will be payable, under the interpretation given the federal statute in Smith v. Commissioner of Interal Revenue, supra, to the federal government. This argument is not supported by the record. So far as it now appears, the amount of the tax due the federal government has been finally determined and paid. There is nothing in the record to indicate that, if the Commonwealth does not collect this sum, the federal authorities will do so.

The decree of the orphans' court is affirmed.